# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JEFFREY LLOYD WAINRIGHT,

    Plaintiff,

v.

COREY GAY; BYRON MORGAN and THE CITY OF WAYCROSS, GEORGIA

    Defendants.

CV 516-63

### ORDER

Pending before the Court is Defendant Corey Gay's ("Officer Gay") Motion to Dismiss (Dkt. No. 6), Defendant Byron Morgan's ("Officer Morgan") Motion to Dismiss (Dkt. No. 10) and Defendant City of Waycross, Georgia's ("the City") Motion for Judgment on the Pleadings (Dkt. No. 18). The motions are now ripe for decision. For the reasons stated below, Officer Gay's Motion to Dismiss (Dkt. No. 6) and Officer Morgan's Motion to Dismiss (Dkt. No. 10) are **GRANTED IN PART** and **DENIED IN PART**. The City's Motion for Judgment on the Pleadings (Dkt. No. 18) is also **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

On August 3, 2014, Officer Gay stopped Plaintiff Jeffrey Lloyd Wainright ("Plaintiff") for driving with an expired tag. Dkt. No. 14 ¶ 9. Upon further investigation, Officer Gay discovered that Plaintiff was driving with an expired license. Id. ¶ 10. Officer Gay then placed Plaintiff under arrest. However, Officer Gay soon discovered that Plaintiff was disabled and had to use a wheelchair to get into his car. Specifically, Plaintiff told Officer Gay that he could not sit on his buttocks, had no balance, and could not stand. Id. ¶ 10.

Plaintiff requested that he receive a wheelchair or be able to call his father, or that Officer Gay move his patrol car closer. Id. ¶ 11. Officer Gay denied these requests. Officer Morgan arrived at the scene soon after to assist. Plaintiff alleges that Officer Gay and Officer Morgan then "partially carried and partially dragged" him to the curb and set him down on his buttocks. Id. ¶ 12.

Plaintiff did not resist and was eventually handcuffed and placed in Officer Gay's squad car. Plaintiff alleges that the event injured a surgical incision on his buttocks, and caused serious injuries to his legs and arms that allegedly resulted in over $71,000 in damages. Id. ¶¶ 17-20. Plaintiff now brings claims against Officer Gay, Officer Morgan and the City of Waycross.

## LEGAL STANDARD

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).

## DISCUSSION

### A. Plaintiff's ADA Claims

Plaintiff alleges that Defendants are liable under the Americans with Disabilities Act ("ADA") for the actions taken by Officer Gay and Officer Morgan. Dkt. No. 1 ¶ 12. Under Title

II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. 42 U.S.C. § 12132. To state a claim of discrimination under Title II, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007). Title II applies solely to "public entities," which includes "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1).

Here, Plaintiff alleges that he was discriminated against by Defendants when they refused to meet his request to have a wheelchair brought to the scene to move him to Officer Gay's squad car. Dkt. No. 1. At the outset, the Court finds that Plaintiff's claims against Officer Gay and Officer Morgan under the ADA must be dismissed. The Eleventh Circuit has held that the ADA does not provide for individual liability, but only

employer liability, in the arrest context. <u>Rylee v. Chapman</u>, 316 F. App'x 901, 905 (11th Cir. 2009) (citing <u>Mason v. Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 1996)). In his responsive briefing, the Plaintiff appears to acknowledge that his ADA claim cannot proceed against the individual officers. Dkt. No. 19. Therefore, the Court turns to Plaintiff's claims against the City.

The question of what types of pre-detainment accommodations the City was required to provide under the ADA is a "reasonableness" inquiry guided by the circumstances. <u>Bircoll</u>, 480 F.3d at 1085. In <u>Bircoll</u>, the plaintiff was a deaf man pulled over for DUI. He requested a sign-language interpreter to guide him through the field sobriety tests, but this request was denied. <u>Id</u>. He then claimed the officer and county government failed to accommodate him under the ADA. The Eleventh Circuit found that it would not have been reasonable to accommodate him under the circumstances. Specifically, the Eleventh Circuit noted the danger of allowing an intoxicated driver to leave the scene and the exigency of obtaining an accurate breathalyzer reading.

In the present case, at least at this stage, it appears plausible that a reasonable accommodation could have been made under the circumstances. In <u>Bircoll</u>, the Eleventh Circuit noted that while accommodations were unwarranted in a DUI stop, they

5

may very well be required in situations like stops for "minor traffic offenses." Id. at 1086. Here, Plaintiff alleges he was pulled over and arrested for driving with expired tags and driving without a valid license. This circumstance may not trigger the same heightened need for exigency and safety present in a DUI stop. Furthermore, Plaintiff's requests for a wheelchair and for Officer Gay to pull his squad car closer could prove less burdensome than the Bircoll plaintiff's 3 a.m. request for a sign-language interpreter. Accordingly the ADA claim against the City survives this stage, and thus, the City's Motion for Judgment on the Pleadings regarding this claim will be denied.

**B.    Plaintiff's Section 1983 Claims**

   **i.    Claims asserted against Officer Gay and Officer Morgan in their official capacities**

Plaintiff sues Officer Gay and Officer Morgan in their official capacities, alleging that they used excessive force when they moved him from his car. Dkt. No. 1 pp. 8-10. The Eleventh Circuit has held that municipal police officers cannot be sued in their official capacities, as the appropriate defendant is the municipality itself. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Therefore all official-capacity claims against Officer Gay and Officer Morgan will be dismissed.

### ii. Claims asserted against Officer Gay and Officer Morgan in their individual capacities

The Court next turns to Plaintiff's excessive-force claim against Officer Gay and Officer Morgan in their individual capacities. Officer Gay and Officer Morgan both allege they are protected from liability under the doctrine of qualified immunity. Dkt. Nos. 6, 10. The qualified immunity defense exists to offer "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When properly applied, the doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

### a. Officer Gay and Officer Morgan acted within the scope of their discretionary authority

To qualify for the protection of the doctrine, a public official must first prove that he was acting within the scope of his discretionary authority at the time the alleged wrongful acts occurred. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). To determine whether a public official acts within his "discretionary authority," he must show "objective circumstances that would compel the conclusion that his actions were

7

undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). In other words, the court must determine "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) (quoting Doe v. McMillan, 412 U.S. 306, 319-20 (1973))).

Effectuating an arrest is clearly a discretionary act. There can be no doubt that Officer Gay's and Officer Morgan's actions occurred within both the performance of their duties and the scope of their authority as law enforcement officials. Thus, the burden shifts to the plaintiff to show that qualified immunity does not apply. Terrell, 668 F.3d at 1250.

  **b. It is plausible at this stage that a violation of clearly established law occurred.**

In determining whether qualified immunity applies, a court engages in a two-step inquiry, assessing whether (1) the plaintiff alleged facts to establish that the officers violated constitutional rights and (2) the right was clearly established.

Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Therefore, "if the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right." Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

Here, Plaintiff claims excessive force in effectuating arrest. Dkt. 1 ¶8-10. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest. See Graham v. Connor, 490 U.S. 386, 394-95 (1989). The Supreme Court has held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner,

---

[1] Federal courts have discretion in deciding which prong to address first. See Pearson, 555 U.S. at 236.

9

471 U.S. 1, 8 (1985) (internal quotations omitted)). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

The Supreme Court has established that a court must evaluate a number of factors to determine excessive force, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. At this stage in the litigation, there is no indication that a particularly serious crime was under review, nor an immediate threat nor flight or resisting arrest. At this stage, the parameters of what was known and visible to the officers is not clear at the time they were alleged to have kicked and half dragged a disabled person to the curb. Furthermore it is unclear whether the rupture of the surgical incision became known to the Defendants during the process. Therefore, the Motions to Dismiss filed by Officer Gay and Officer Morgan are denied as to this claim but may be revisited at the summary judgment stage.

### iii. Plaintiff's Section 1983 claims against the City must fail

Plaintiff alleges that the City may be held liable for failing to "train, supervise, control, direct, and monitor" Officer Gay and Officer Morgan. Dkt. 1 ¶ 37. In order to establish municipal liability, a plaintiff must show that the municipal employee's unconstitutional acts "implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or else are taken "pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 690-91 (1978). A failure to properly train or supervise municipal police officers is also a "policy or custom" giving rise to Section 1983 liability when that failure reflects "deliberate indifference" to the constitutional rights of municipal inhabitants and directly causes an actual constitutional violation. City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); McKinney v. DeKalb Cty., 997 F.2d 1440, 1442 (11th Cir. 1993). A failure to train amounts to deliberate indifference when "the need for more or different training is . . . obvious." Harris, 489 U.S. at 390.

Plaintiff has failed to plausibly allege a deliberate indifference on the part of the City. He fails to allege any previous incidents which occurred which would have put the City on notice of constitutional violations. Furthermore, Plaintiff has failed to point to any policy which would result in any constitutional violations. Therefore, Plaintiff's Section 1983 claims against the City for failure to train cannot survive, and the City's Motion for Judgment on the Pleadings is granted.

## CONCLUSION

For the reasons set forth above, Defendants Officer Gay's Motion to Dismiss (Dkt. No. 6), Officer Morgan's Motion to Dismiss (Dkt. No. 10) and Defendant the City of Waycross's Motion for Judgment on the Pleadings (Dkt. No. 18) are **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this 31st day of March, 2017.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA